## JACOB v. COMMISSIONER OF INTERNAL REVENUE (four cases).

### No. 10390.

Circuit Court of Appeals, Ninth Circuit.

Nov. 18, 1943.

278

S. J. Bischoff, of Portland, Or., for petitioners.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Helen R. Carloss, and Irving I. Axelrod, Sp. Assts. to Atty. Gen., for respondent.

Before GARRECHT, STEPHENS, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

This case presents four consolidated petitions for review of decisions of the United States Tax Court upholding the assessment of transferee liability against the petitioners under the provisions of § 311(a) (1) of the Revenue Act of 1936.[1]

The assessments are based on deficiencies in income and excess profits taxes of the Central Holding Company, an Oregon corporation, for the fiscal year ending June 30, 1938. The petitioners are respectively the wife and the three daughters of Robert T. Jacob. Jacob himself is not a party to the proceeding.

In 1936 Jacob and two others, Conley and Barnes, organized the Central Holding Company which acquired a hotel at Burns, Oregon. Three hundred shares of the stock of the Holding Company were issued. Apparently these shares were to be divided equally among the three men, but because of the insistence of a secured creditor of the corporation a majority of the shares were temporarily held by Jacob. The corporation operated the hotel for about a year or until it was destroyed by fire on July 17, 1937. The hotel had been insured in several companies and insurance in the total amount of $72,000—a sum largely in excess of the cost of the property—was paid by the insurers and divided among the three men.

For a small portion of the insurance money paid him Jacob signed a receipt in the names of petitioners, but for the bulk of it he signed no receipt. There is no showing that the petitioners knew he was receipting for any of the money in their names. Prior to the organization of the Central Holding Company Jacob had told petitioners that he was going to give them some of the stock in that corporation. After the fire Jacob surrendered for cancellation 99 of the 100 shares belonging to him and caused these shares to be reissued to petitioners, as follows: 24 shares in the name of the wife, and 25 shares in the names of each of the three children. The certificates for these shares he then mailed to the petitioners at Seaside, Oregon, with the request that they be endorsed and returned to him. The certificates were so endorsed and returned by petitioners and five days later Jacob gave them to Barnes, who desired for his own purposes to keep the corporation alive in order that another hotel property or properties might be acquired in the corporate name. It appears that neither Jacob nor Conley was any longer interested in a corporation whose sole asset, aside from the insurance money, had gone up in smoke, and each had agreed to turn over his stock to Barnes. Their interest in the matter was confined to the disposition of the insurance proceeds.

Jacob, who was experienced in federal tax matters, prepared the income tax returns of the Central Holding Company for the fiscal years (ending June 30) 1937 and 1938. Upon auditing these the Commissioner determined certain deficiencies and fraud penalties, and on March 17, 1939, sent notices to Jacob, Conley, Barnes, and Barnes' wife, advising them that he intended to assess them as transferees of the Holding Company. There was a petition for redetermination before the Board of Tax Appeals, and on December 5, 1939 the controversy was settled by a stipulation whereby Jacob, Conley, Barnes, and Mrs. Barnes agreed to pay all or a stated percentage of the deficiencies and penalties assessed, the Board finding that each of the four was liable as a transferee for the named deficiencies. The Commissioner later unearthed other unpaid tax liabilities of the Central Holding Company for the fiscal

[1] "(1) Transferees. The liability, at law or in equity, of a transferee of property of a taxpayer, in respect of the tax (including interest, additional amounts, and addi- tions to the tax provided by law) imposed upon the taxpayer by this title." 26 U.S. C.A. Internal Revenue Acts, page 924.

year ending June 30, 1938, and he then sought to have the Board vacate its earlier decision so that transferee liability might be assessed against the four for these previously undiscovered delinquencies. After considering the matter the Board, on procedural grounds which we need not go into, denied the Commissioner's application to make additional assessments against Jacob and his associates.

Thereafter the Commissioner assessed against the petitioners the taxes which, through negligence, he had failed to assess against the immediate recipients of the corporate funds. On hearing before the Tax Court the assessments were upheld.

■ We think the decision holding the petitioners liable as transferees is substantially unsupported.[2] There was, it is true, evidence of an earlier intention on the part of Jacob to make a gift to the members of his family of some of the stock in the Central Holding Company, and of a promise on his part to that effect. However, Jacob testified that his intention was to give his wife and children an interest in a going concern in the form of stock, but that the making of gifts of cash was not within his purpose. He felt, so he testified, that gifts of cash would be unwise. True, also Jacob caused his shares to be reissued in petitioners' names, but this was after the fire and at a time when he appears already to have made up his mind to get out of the corporation and to give the shares to Barnes. The plan had theretofore been agreed upon and in part carried into effect to distribute the insurance proceeds among Jacob, Conley and Barnes. In the light of this program, which left the corporation with nothing, the shares themselves had ceased to be of value to anyone except Barnes, whose purpose in wanting them has been explained.

There is no evidence in the record that Jacob turned over any of the insurance proceeds to the petitioners and none binding on them that he held the proceeds for their use. Nor is there a showing that he used the money for their benefit. On the contrary the petitioners all testified that they had never received any of the money, and the daughters stated that none of it was ever applied to their education so far as they knew. At most there may be said to be evidence of an unexecuted intention to make a gift of the money.

■ A leading case in Oregon on the subject of gifts is Grignon v. Shope, 100 Or. 611, 197 P. 317, 198 P. 520. It is there said (100 Or. at pages 616, 617, 197 P. at page 319) that among the essentials of a valid gift inter vivos are (a) that the gift must be complete and nothing left undone; (b) the property must be delivered by the donor and accepted by the donee; and (c) the gift must go into immediate and absolute effect. The gift must, said the court, "be so complete that if the donor again resumes control of it without the consent of the donee he becomes liable as a trespasser." This holding is but a reiteration or recognition of the general rule on the subject. 28 C.J., Gifts, 617, 635; 24 Am. Jur., Gifts, 725, 741.

The Commissioner argues that there was a constructive receipt of the money by petitioners, and that Jacob sustained toward them some undefined agency relationship. The argument appears to us synthetic and unconvincing. The most the record can be said to show is that Jacob made to his family an Indian gift of the corporate stock while contemporaneously appropriating to himself a share of the corporate funds. It may or may not be that the family had, or ultimately will enjoy, some benefit from the transaction; but a transfer more tangible and direct than this must be shown to establish transferee liability. Whatever Jacob's purpose may have been in going through his elaborate form of shadow-boxing, it remains true that the members of his family are not to be held as recipients of corporate funds without a showing that they were in fact recipients. It is not enough if such be the case, that they may have a cause of action against Jacob for the tortious conversion of the moneys he received.

Reversed.

---

[2] Concerning the elements of transferee liability see 9 Mertens, Law of Federal Income Taxation, 495–499.